UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>MAIETTA CONSTRUCTION, INC.,<br><br>Debtor. | Chapter 11<br>Case No. 10-21171 |

### APPLICATION FOR ORDER, PURSUANT TO SECTIONS 327 AND 328 OF THE BANKRUPTCY CODE, AUTHORIZING THE EMPLOYMENT OF SPINGLASS MANAGEMENT GROUP, LLC AS FINANCIAL ADVISORS TO THE DEBTOR

NOW COMES Maietta Construction, Inc. (the "Debtor"), the debtor-in-possession, by and through its attorneys, and hereby requests that this Court enter an order approving the employment of Spinglass Management Group, LLC ("Spinglass") as financial advisors to the Debtor. Simultaneously with the filing of this application (the "Spinglass Application"), the Debtor has filed the Affidavit of Mark F. Stickney (the "Stickney Affidavit") in support hereof, and the Debtor further states as follows:

### JURISDICTION, VENUE AND STATUTORY BASIS

1.  This Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 327(a) and 328(a) of the United States Bankruptcy Code, Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (hereinafter "Fed. R. Bankr. P.") and Rules 2014-1 and 2014-2 of the local Rules of this Court (hereinafter "D. Me. LBR").

### BACKGROUND

2. The Debtor is in the construction business, providing such services as excavation and site clearing, road construction, drainage and sewage construction, backfilling and fine grading, snowplowing and foundation work. In addition, the Debtor also sells loam and crushed rock.

3. During the course of its 45 year history, the Debtor emerged as an extremely successful contractor and has been hired to provide excavation and construction services on a number of high profile construction jobs in southern Maine. Some of the more recent projects include site clearing, excavation and sewage, drainage and/or road construction in connection with the Staples store in Falmouth Village, the Target Mall site in South Portland and the Portland International Jetport expansion.

4. Unfortunately, in 2008, fuel costs increased dramatically at a time when the economy took a general downturn. The construction industry was one of the hardest hit sectors of the economy and pricing on available projects decreased substantially. Any work the Debtor was able to obtain produced low or no margin of profit and the Debtor's sales declined from $13 million annually in July 2004 to just $8 million between July 2008 and July 2009.

5. Although the Debtor successfully weathered previous economic downturns, the most recent recession has proven more drastic than the Company originally anticipated – both in terms of duration and severity – and the Debtor was slow to make responsive organizational changes.

6. Even after the Debtor made necessary adjustments to its business model, however, the losses continued and it became increasingly difficult for the Debtor to meet its obligations as they became due. As a result, the Debtor began paying net payroll only and,

although cash infusions from third parties allowed the Debtor to periodically catch up on its tax withholding liabilities, the Debtor would fall behind again almost immediately.

7. Earlier this year, after defaulting on a performance bond as a result of its large debt service and aggressive collection efforts by the Internal Revenue Service (the "IRS"), the Debtor became unable to secure performance bonds necessary to bid on the few construction projects that were available. Although the economy is showing signs of improvement, there is still a lack of profitable projects in the excavation business and the Debtor is unable to attract any of those existing projects until it reduces its burdensome debt load and qualifies for performance bonds.

8. As a result, on July 21, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). The Debtor continues to operate its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtor's Chapter 11 case (the "Case"), and no official committee has been appointed or designated.

9. The Debtor expects that additional projects will eventually become available and, as demand once again surpasses supply, pricing for those projects will increase allowing the Debtor to return to profitability. Unless and until that happens, however, the Debtor is contemplating a liquidating plan of reorganization involving a financed sale of assets to Maietta Enterprises, Inc., a new company or an existing third party.

**RELIEF REQUESTED**

10. Subject to the approval of this Court, the Debtor seeks to employ Spinglass to serve as its financial advisors in connection with the commencement and prosecution of the Case, effective as of the commencement of the Case. Accordingly, pursuant to sections 327(a)

and 328(a) of the Bankruptcy Code and Fed. R. Bankr. P. 2014(a), the Debtor requests that this Court approve the employment of Spinglass to provide necessary financial advice to the Debtor during the Case. The Debtor selected Spinglass based on its considerable experience in financial matters in general and in bankruptcy cases in particular, and the Debtor believes that Spinglass is well qualified to provide the necessary financial services.

11. The professional services Spinglass is to render include, without limitation, the following:

(a) Reviewing and analyzing security instruments;

(b) Reviewing and providing input on the Debtor's operating budget throughout the Case;

(c) Assisting the Debtor in its projected income models and plans for restructuring;

(d) Providing the Debtor with advice in relation to all financial matters in this Case, including preparation of schedules, monthly operating reports and other required reporting; and

(e) Assisting the Debtor in its negotiations with prospective buyers and/or investors.

## BASIS FOR RELIEF

12. Under section 327(a) of the Bankruptcy Code, a debtor in possession is authorized to employ one or more professional persons that do not hold or represent an interest adverse to the estate and that are "disinterested persons," as that term is defined in Section 101(14) of the Bankruptcy Code, to represent or assist the debtor in carrying out its duties under the Bankruptcy Code. *See* 11 U.S.C. §§ 101(14) and 327(a). Section 1107(b) of the Bankruptcy Code modifies sections 101(14) and 327(a) in cases under Chapter 11 of the Bankruptcy Code, providing that a person is not disqualified for employment under section 327(a) of the Bankruptcy Code by a

debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case. *See* 11 U.S.C. §1107(b).

      **A.**     **Spinglass Is Disinterested and Does Not Have an Adverse Interest**

13.     To the best of the Debtor's knowledge, Spinglass does not have any connection with or any interest adverse to the Debtor, its creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or persons known to Spinglass to be employees of the Office of the United States Trustee in Portland, Maine. Accordingly, the Debtor believes that Spinglass does not hold or represent any interest adverse to the Debtor's estate and is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

      **B.**     **Arrangement for Compensation and Reimbursement of Spinglass**

14.     Spinglass began working for the Debtor in April of 2009, and is currently providing services to the Debtor pursuant to the letter agreement attached to the Stickney Affidavit as **Exhibit B**. To date the Debtor has paid approximately $78,000.00 to Spinglass. Spinglass currently holds $24,313.30 in funds as a general security retainer (the "Retainer") against which fees and expenses may be applied. This retainer is the same retainer referred to in the application to retain Mark Stickeny as Chief Restructuring Officer, and will be shared with Mark Stickney on a *pro rata* basis, if required.

15.     The Debtor owes prepetition balances to Spinglass only for fees and costs incurred in connection with the filing of this Case. The Debtor proposes that Spinglass include these prepetition fees and costs in the first post-petition invoice to be submitted to the Debtor and that the Debtor pay such amounts subject to the applicable sections of the Bankruptcy Code, the Fed. R. Bankr. P., and the D. Me. LBR.

16. With respect to fees and expenses incurred post-petition, the Debtor, in accordance with D. Me. LBR 2014-3 and subject to approval by this Court, proposes to pay to Spinglass its customary hourly rates in effect from time to time as set forth in the Stickney Affidavit. These hourly rates are subject to change from time to time in accordance with Spinglass' established billing practices and procedures. The Debtor submits that such rates are reasonable and should be approved by the Court, subject to a determination of the amounts to be paid to Spinglass upon application for allowance of compensation. The Debtor, subject to Court approval, also proposes to reimburse Spinglass for its actual and necessary expenses incurred in connection with the services discussed above and set out in the engagement letter attached to the Stickney Affidavit as **Exhibit B**. Spinglass professionals will maintain detailed records of time spent and any actual and necessary expenses incurred in connection with the rendering of their services by category and nature of the services rendered.

12. Spinglass' hourly rates are set at a level designed to fairly compensate it for the work of its professionals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned and may be adjusted by Spinglass from time to time.

13. The Debtor proposes to employ Spinglass under a general security retainer and upon the terms and conditions set forth herein. As noted above, the current balance of the Retainer is $24,313.30. In addition, in view of the substantial amount of work expected to be performed by Spinglass during the course of the Case, the Debtor has agreed that it will pay Spinglass on a bi-weekly basis, in accordance with the following procedures:

    a. Spinglass may invoice the Debtor on a monthly basis for the value of services rendered by Spinglass and disbursements incurred by Spinglass for the benefit of the Debtor. Copies of all invoices shall be simultaneously served by

facsimile or by U.S. Mail, First Class, postage prepaid, on the Office of the U.S. Trustee, and any committee of creditors appointed in the Case;

b. Subject to the provisions of the next paragraph, the Debtor is hereby authorized to pay such invoices upon receipt, i.e. to pay ninety percent (90%) of the amount of fees and one hundred percent (100%) of the amount of expense reimbursement requested in such invoices and, in the event the Debtor does not have the financial ability to pay such invoices, the Debtor shall be allowed to draw down on the Retainer to fund the obligations in the amounts set forth herein;

c. Nothing herein shall prohibit or prevent the Debtor, or any party in interest in the Case, from objecting to payment of any such invoice or any portion thereof, on any lawful grounds. Any objection to payment of an invoice shall be made within ten (10) days of service of such invoice. In the event of any such objection, service of such objection shall be made upon Spinglass, the Debtor, the Office of the U.S. Trustee, and any committee appointed in the Case, and upon receipt of any such objection, and the failure of Spinglass and the objecting party to resolve the same consensually, payment of such invoice or any portion thereof to which an objection remains outstanding shall be made only upon order of this Court, entered after appropriate notice and hearing.

d. Spinglass shall file motions for interim approval of compensation and reimbursement of expenses not less frequently than every one hundred and eighty (180) days, with the first such one hundred and eighty (180) day period to commence as of the Petition Date. Each motion shall seek compensation and reimbursement of expenses for the period that concludes at the end of the month which immediately precedes the end of said 180-day period (the "Covered Period"). The Court, in respect of such motions, may allow or disallow any compensation or reimbursement of expenses sought for the Covered Period. If the amount previously paid to Spinglass for the Covered Period exceeds that which is allowed by the Court for the Covered Period, then Spinglass shall promptly reimburse the Debtor for such excess. If the amount previously paid to Spinglass for the Covered Period is less than that which is allowed by the Court for such period, then the Debtor shall promptly pay the balance due.

e. Nothing contained in this procedure shall limit the jurisdiction of the Court with respect to allowance of fees and reimbursement of expenses for Spinglass.

## **NOTICE**

14. Notice of the hearing on this Motion was served on the following parties on the

date on which it was filed by e-mail or facsimile: (1) the United States Trustee; (2) the Debtor's secured creditors, or, if applicable, to the lawyers representing such creditors; (3) the non-insider holders of the twenty largest unsecured claims against the Debtor or, if applicable, to the lawyers representing such holders; and (4) applicable federal and state taxing authorities. Copies of the Motion were served on the parties listed above via overnight mail.

## CONCLUSION

15. The services of Spinglass are necessary to enable the Debtor to execute faithfully its duties as debtor and debtor in possession and to develop a feasible plan or plans of reorganization that maximize the value of the estate's assets for the benefit of all constituencies. Spinglass is well qualified to provide the necessary financial advisory services to the Debtor as debtor and debtor in possession under the Bankruptcy Code in an efficient, cost-effective and timely manner.

WHEREFORE, the Debtor requests that this Court enter an order approving the employment of Spinglass on the terms described herein, and to grant such further relief as is just and appropriate.

Dated: July 21, 2010

MAIETTA CONSTRUCTION, INC.
By its proposed attorneys

/s/ Robert J. Keach, Esq.
Robert J. Keach, Esq.
Jay S. Geller, Esq.
D. Sam Anderson, Esq.
Jessica A. Lewis, Esq.
BERNSTEIN, SHUR, SAWYER & NELSON, P.A.
100 Middle Street
P.O. Box 9729
Portland, ME 04104-5029
Tel: (207) 774-1200
Fax: (207) 774-1127
jgeller@bernsteinshur.com
rkeach@bernsteinshur.com

sanderson@bernsteinshur.com
jlewis@bernsteinshur.com