UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:

MAIETTA CONSTRUCTION, INC.
& MAIETTA ENTERPRISES, INC.

Debtor.

Chapter 11

Case Nos. 10-21171 and 11-20197

Jointly Administered

## ORDER (I) CONFIRMING DEBTORS' JOINT PLAN OF REORGANIZATION DATED APRIL 7, 2011 AND (II) AUTHORIZING AND DIRECTING CERTAIN ACTIONS IN CONNECTION THEREWITH

Pursuant to this Court's Order Approving Joint Disclosure Statement; Setting Date for Confirmation Hearing; and Establishing Deadlines for Receipt of Ballots, and Filing Rule 3018(a) Motions [Docket No. 245] (the "Approval Order"), this Court conducted a hearing on May 17, 2011 (the "Hearing") to consider confirmation of the Debtors' Joint Plan of Reorganization Dated April 7, 2011 [Docket No. 238] (as the same has been amended, modified, or supplemented from time to time, the "Plan"), the Court having approved the Joint Disclosure Statement with Respect to Plan of Reorganization of Debtors Dated April 7, 2011 [Docket No. 239] (the "Disclosure Statement"); counsel to Maietta Construction, Inc. and counsel to Maietta Enterprises, Inc. (collectively, the "Debtors"), pursuant to and in accordance with the Approval Order, having mailed true and correct copies of the Approval Order, the Disclosure Statement (with all exhibits thereto), the Plan, and ballots (to creditors in classes entitled to vote on the Plan) to all known holders of claims against and interests in and to the Debtors entitled to receive copies of same, such mailing being hereby determined to be adequate and sufficient notice to all holders of claims and interests in and to the Debtors, and all other parties in interest under the circumstances of the above-captioned cases; the Court having (i) considered the evidence at the Hearing, including, without limitation, the Plan, the

1

Declaration of Vincent A. Maietta in Support of Debtors' Joint Plan of Reorganization Dated April 7, 2011 [Docket No. 279], the Declaration of Mark Stickney in Support of Debtors' Joint Plan of Reorganization Dated April 7, 2011 [Docket No. 280], the Declaration of Angela L. Stewart in Support of Debtors' Joint Plan of Reorganization Dated April 7, 2011 [Docket No. 283], the Declaration of William J. Monto [Docket No. 282], the Declaration of Marc Stanfield, Certified General Real Estate Appraiser [Docket No. 277], the Declaration of Brian P. Diskin, Certified General Real Estate Appraiser [Docket No. 278], the Declaration of Jason Mills [Docket No. ], and the Declaration of Timothy H. Norton, Esq. in Support of Debtors' Joint Plan of Reorganization Dated April 7, 2011 [Docket No. 285], all of which declarations were admitted into evidence as the direct testimony of such declarants on the Debtors' motion pursuant to Rule 611(a) of the Federal Rules of Evidence; (ii) reviewed the certificate filed with this Court evidencing the ballots duly and timely received by the Debtors pursuant to the Approval Order; (iii) taken judicial notice as appropriate of the items on the docket in this case; and (iv) considered the statements of counsel at the Hearing and the memorandum of law filed in support of confirmation by the Debtors, the Court hereby makes the following findings of fact, conclusions of law, and orders:

THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

A.   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

C. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

D. The statutory predicates for relief granted herein are sections 105(a), 363, 365, 502, 503 and 1129 of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), as supplemented by Bankruptcy Rules 2002, 3020, 6004, 6006 and 9019.

E. Notice of the Hearing and the relief granted herein was sufficient under the circumstances and in full compliance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of this Court.

F. All objections to the Plan, including the objections filed by Blackstone,[1] the United States Trustee, the IRS and Caterpillar Access Account Corporation ("Cat Access") have been withdrawn in accordance with the terms of this Order.

G. The Plan complies, and the Debtors have complied, with all of the requirements set forth in sections 1129(a)(1)-(16) and 1129(b) of the Bankruptcy Code, as applicable.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. The Plan shall be and hereby is confirmed pursuant to section 1129 of the Bankruptcy Code. Objections, including the objections filed by Blackstone, the IRS, CatAccess, and the United States Trustee, have been resolved for the reasons and on the terms set forth on the record at the Hearing and as reflected by the terms hereof.

2. Section 3.2 of the Plan is hereby deleted in its entirety and replaced with the following:

> 3.2 Class 2 Claims are impaired. In full and final satisfaction of the Claims in Class 2, Blackstone shall have an Allowed Secured Claim against the Debtors in the total amount of **$632,000.00**, the "Blackstone Claim"). No interest shall continue to accrue as to the Blackstone Claim

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan and/or the Disclosure Statement.

on and after the date of this Order. The Blackstone Claim shall be fully and finally satisfied as follows:

(a) Payment of **$275,000.00** in accordance with the terms and conditions set forth in that certain Joint Motion of Maietta Construction, Inc. and Maietta Enterprises, Inc. for an Order: (I) Approving the Sale of Certain Pieces of Heavy Equipment; and (II) Authorizing the Debtors to Distribute the Proceeds (the "Sale Motion"), which Sale Motion was authorized by this Court by Order dated May 17, 2011 (the "Sale Order").

(b) Payment of the upside from the sale of equipment at the auction authorized by the Sale Order, which upside shall paid in accordance with the terms of the Sale Motion and the Sale Order.

(c) Any remaining amount owed after payment of the amounts set forth in subparts (a) and (b) above (collectively the "Blackstone Auction Payments") shall be paid as soon as is practicable after the completion of the sale described in the Sale Motion and the payment of both of the Blackstone Auction Payments (the "Sale Consummation Date"), but in any event on or before sixty (60) days after the date of this Order; if the loan closing and funding occurs prior to the Sale Consummation Date or prior to the expiration of the sixty (60)-day period an amount of not more than **$232,000.00** of the balance of the Blackstone Claim will be paid from the proceeds of the loan authorized by this Court by Order dated May 17, 2011 on the later of (i) the loan closing and funding date; or (ii) the Sale Consummation Date, with any remaining balance to be paid—from any available source—on or before the expiration of the sixty (60)-day period.

Payment of the Blackstone Claim in accordance with the terms hereof shall constitute full and final satisfaction of any and all obligations owed to Blackstone, including, but not limited to, any and all obligations owed by the Debtors (including the entities merged into Enterprises prior to Enterprises filing for relief under chapter 11 of the Bankruptcy Code), the Reorganized Debtor and any and all guarantors and/or co-makers under any and all agreements entered into by and between Blackstone and the Debtors (the "Blackstone Guarantors").

Immediately upon full payment of the Blackstone Claim in accordance with the terms hereof, Blackstone shall discharge and/or terminate any and all Liens, Claims or encumbrances against any and all property of the Debtors and any of the Blackstone Guarantors, including any and all mortgages and security interests granted to Blackstone in relation to the transactions entered into by and between the Debtors and Blackstone (the

"Blackstone Transactions"), any and all UCC financings statements and any and all liens on any titled vehicles owned by the Debtors, whether or not granted by the Debtors, the Blackstone Guarantors or any other entity or person.

Blackstone and the Debtors and the Blackstone Guarantors are currently engaged in certain litigation and other proceedings pending in state and federal courts (any and all litigation or other judicial proceedings between the parties, including the Blackstone Guarantors, hereinafter referred to as the "Litigation"). The Litigation shall be stayed pending payment of the Blackstone Claim in accordance with the terms hereof. The parties shall cooperate in filing any and all documents necessary to effectuate the stay. In the event the Blackstone Claim is fully satisfied in accordance with the terms hereof, all of the Litigation shall be dismissed with prejudice and without costs to any party.

3. Section 3.3 of the Plan is hereby deleted in its entirety and replaced with the following:

3.3 Class 3 Claims are impaired. In full and final satisfaction of the Class 3 Claims of the IRS (the "IRS Class 3 Claim"), the Reorganized Debtor shall make equal monthly payments to the IRS in an amounts which shall equal payment of the IRS Class 3 Claim in full amortized over a period of six (6) years from the Effective Date with interest accruing on the IRS Class 3 Claim at the current statutory rate of five percent (5%). The first monthly payment shall be paid on the later of: (a) the first day of the first calendar month following the Effective Date; or (b) the first day of the first calendar month following the date the Debtors and the IRS agree on the amount of the IRS Claim or on the date that this Court enters a final order determining the amount of the IRS Class 3 Claim.

The IRS Class 3 Claim shall be secured by a first priority mortgage on the Baldwin Pit (the "IRS Mortgage"). Upon execution and delivery of the IRS Mortgage in accordance with the terms hereof, the IRS shall discharge and/or terminate any and all other liens or encumbrances against any and all property of the Debtors, or any other persons liable or allegedly liable with the Debtors, including any and all tax liens against property of the Debtors or such persons.

In addition, the Unclassified Claim of the IRS, consisting of unsecured priority tax claims under section 507(a)(8) of the Bankruptcy Code (the "IRS Priority Claim"), shall be paid in full in equal monthly payments in cash with post-confirmation interest accruing at the current statutory rate of 5% over a period not to exceed 5 years after the date of the later of the Debtors' petitions for relief. The first monthly payment shall be paid on the later of: (a) the first day of the first calendar month following the Effective Date; or (b) the first day of the first calendar month following the date the Debtors and the IRS agree on the amount of the IRS Priority Claim or on

the date that this Court enters a final order determining the amount of the IRS Priority Claim.

4. Section 3.18 of the Plan is hereby deleted in its entirety and replaced with the following:

> 3.18 <u>Class 18 Claims</u> are impaired. In full and final satisfaction of the Allowed Unsecured Claims in Class 18, the Reorganized Debtor shall make annual payments to the Holders of Class 18 Claims equal to seventy percent (70%) of the Reorganized Debtor's net income, as such income is determined in accordance with GAAP. In addition, the Reorganized Debtor shall be under no obligation to make any distribution if its cash on hand at the end of the calendar year is less than $100,000.00. The purpose of this limitation is to ensure that the Reorganized Debtor has sufficient cash reserves to maintain operations, and thereby be in a position to make future payments in accordance with the Plan, if unanticipated events negatively affect the Reorganized Debtor's cash flow. Such annual payments shall commence on the thirtieth (30th) day of the calendar year immediately following the calendar year in which the Effective Date occurs, and shall continue until such Claims are paid in full. Each calendar year shall end December 31. Such annual payment shall be made on a pro rata basis to each Holder of an Allowed Class 18 Claim, meaning that each such Holder shall receive, on account of such Claim, an amount equal to the total amount to be distributed to the Holders of Allowed Class 18 Claims, times a fraction, the numerator of which is the amount of the Allowed Claim of such Holder, and the denominator of which is the total amount of Allowed Class 18 Claims. The obligation of the Reorganized Debtor to make plan distribution and payments to Holders of Allowed Class 18 Claims shall be unsecured, and such Allowed Unsecured Claims shall be paid without interest.

5. Pursuant to the terms of the Plan, the Debtors' estates are hereby substantively consolidated into the Consolidated Estate.

6. Confirmation of the Plan shall discharge the Debtors from all Claims arising before the Confirmation Date, except as expressly provided in this Order or in the Plan.

7. Except as otherwise expressly provided in the Plan, the documents executed pursuant to the Plan, or the Confirmation Order, on and after the Effective Date, all persons and entities who have held, currently hold or may hold Claims against or interests in the Debtors or the Consolidated Estate that arose prior to the Effective Date (including, but not limited to, states and other governmental units, and any state official, employee, or other entity acting in an

individual or official capacity on behalf of any state or other governmental units) are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against any Protected Party or any property of any Protected Party; (ii) enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against any Protected Party or any property of any Protected Party; (iii) creating, perfecting, or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected Party or any property of any Protected Party; (iv) asserting or effecting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against any obligation due to any Protected Party or any property of any Protected Party; and (v) any act, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with any provisions of the Plan. Any Person or entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in the Plan or this Order shall be construed to limit, alter, modify or enjoin Berkley from all of its rights and remedies under the GIA for past, current or future bonding, the Loan Agreement or the promissory note entered into pursuant to the Loan Agreement. Nothing contained in the Plan or this Order shall be construed to limit, alter, modify or enjoin Caterpillar from any or all of its rights and remedies under the Caterpillar Settlement. Nothing contained in the Plan or this Order shall prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of the Debtor or the Reorganized Debtor under the Plan. This Order shall also constitute an injunction enjoining any Person from any property of any Protected Party based on, arising

from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Claim on which the payments due under the Plan have been made or are not yet due under the Plan.

8.      Unless otherwise provided in the Plan or this Order, all injunctions or stays provided for in the Case by orders of the Bankruptcy Court, under Sections 105 or 362 of the Bankruptcy Code, the Plan, or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until entry of the Final Decree.

9.      On and after the Effective Date, none of the Exculpated Parties shall have or incur liability for, and each Exculpated Party is hereby released from, any claim, cause of action or liability to any other Exculpated Party, to any Holder of a Claim or Interest, unless expressly provided for in the Plan or to any other party in interest, (a) pertaining to the commencement of the Case or (b) in connection with the formulation, negotiation and/or pursuit of the Plan, the consummation of the Plan, and/or the administration of the Plan and/or the property to be distributed under the Plan, except, in either case, for claims, causes of action or liabilities arising from the gross negligence, willful misconduct or fraud of any Exculpated Party, in each case subject to determination of such by Final Order of a court competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan and such reasonable reliance shall form an absolute defense to any such claim, cause of action, or liability. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections and benefits of Section 1125(e) of the Bankruptcy Code. Except as provided in Section 8.5 of the Plan, no provision of the Plan, Disclosure Statement or this Order shall be deemed to act or release any claims, causes of action or liabilities that the Debtors, the Reorganized Debtor, the Consolidated Estate or the Estate may have against any

person or entity for any act, omission, or failure to act that occurred prior to the Filing Date of the Case, nor shall any provision of the Plan or this Order be deemed to act to release any Post-Confirmation Causes of Action.

10. In consideration of the conversion of the V&E secured debt to equity in the Reorganized Debtor, as well as the waiver of claims of the Individual Shareholders, and provided that there is no default with regard to the payments required by the Plan as to any class of Allowed Claims, this Order temporarily enjoins all entities including, but not limited to, all creditors, claimants, parties-in-interest, investors and Holders of all Claims and Interests of or against the Individual Shareholders, from asserting any Claims or causes of action against the Individual Shareholders, including, without limitation, in their capacity as guarantors, co-makers, or responsible parties of the obligations of, or co-debtors with, any or all of the Debtors, provided, however, that upon such default, if any, under the Plan, unless this Court, upon appropriate pleading, orders otherwise, such injunction shall dissolve upon further order of this Court adjudicating that such a default exists. Until such default and such order, the Consolidated Estate and the Reorganized Debtor will also forbear from pursuing any Claims against the Individual Shareholders, if any. In relation to Cat Access only, the injunctions relating to the Individual Shareholders arising out of the Plan or this Order shall terminate in the event an amount equal to one half (1/2) of the total Allowed Claim of Cat Access has not been paid by the Reorganized Debtor on or before December 31, 2015 or in the event the remaining amount owed to Cat Access by the Reorganized Debtor has not been paid in full by the Reorganized Debtor on or before December 31, 2018. Upon payment in full of all Allowed Claims as required by the Plan and in accordance with the Plan, any and all Claims against the Individual Shareholders held by creditors, claimants, parties-in-interest, investors and/or Holders of Claims and Interests, if any, shall be permanently released and discharged; provided,

however, that the relief provided by section 8.5 of the Plan as implemented by this provision of this Order shall be conditioned upon execution and delivery of satisfactory tolling and negative pledge agreements by the Individual Shareholders to the Plan Fiduciary and to the benefit of all such Holders of Claims against the Debtors, the Consolidated Estates or the Reorganized Debtors, or any of them, such that any and all such Claims, if any, against the Individuals Shareholders held by such Holders are preserved pending completion of all payments under the Plan. Nothing contained in the Plan or this Order shall be construed to limit, alter, modify or enjoin Berkley from all of its rights and remedies under the GIA for past, current or future bonding, the Loan Agreement or the promissory note entered into pursuant to the Loan Agreement.

11. Spinglass Management Group, LLC is hereby appointed Disbursing Agent for all purposes under the Plan and is hereby directed to perform such duties as set forth in the Plan.

12. A Plan Fiduciary shall be appointed by the Reorganized Debtor, in consultation with Caterpillar, the United States Trustee, and Blackstone (collectively, the "Consulting Parties"), such appointment to be made on or prior to the Effective Date, and the Plan Fiduciary shall be an independent certified public accountant (unless otherwise agreed) reasonably satisfactory to the Consulting Parties. Without limiting the generality of the foregoing, the Plan Fiduciary shall monitor compliance with Article III, Section 3.18 of the Plan, and shall receive quarterly reports (within thirty (30) days following the end of each quarter) from the Debtor as detailed below. In addition, the Reorganized Debtor shall provide to the Plan Fiduciary, within thirty (30) days after receipt, its annual financial statements, whether audited or reviewed. The Plan Fiduciary will be entitled to hire professional advisors at the expense of the Reorganized Debtor, provided, however, that the Reorganized Debtor shall not be liable to pay more than $10,000.00 or an amount agreed to by the Consulting Parties per calendar year, in the

aggregate, for fees of such professional advisors and of the Plan Fiduciary, plus reasonable out of pocket expenses. In the event that the Reorganized Debtor defaults under Article III, Section 3.18 of the Plan, then from and after the occurrence of any such default, the $10,000.00 limit or the limit agreed to by the Consulting Parties shall not apply, but in any such event, all professional fees and expenses, and all fees and expenses of the Plan Fiduciary, shall be reasonable in amount. The Plan Fiduciary will have standing to enforce the provisions of Article III, Section 3.18 of the Plan, including the right to commence legal proceedings on behalf of holders of Allowed Class Eighteen Claims to enforce payment of such Claims, following the occurrence of an event of default, which is not cured within any applicable cure period, in the Reorganized Debtor's failure to perform its obligations under Article III, Section 3.18. The Plan Fiduciary shall be terminated and discharged upon payment of all Allowed Class Eighteen Claims in full. The Reorganized Debtor shall provide the Plan Fiduciary with the following reports and information within thirty (30) days of the end of each calendar quarter (each quarter being a "reporting period") until the Reorganized Debtor has satisfied in full its obligations under Section 3.18 of the Plan:

   a. A statement of cash flows for the reporting period;
   b. A summary of sales by month and type for the reporting period;
   c. An accounts receivable aging as of the end of the reporting period;
   d. Copies of all bank account statements of the Reorganized Debtor for the three months comprising the reporting period;
   e. Payroll records for the reporting period; and
   f. A fixed asset schedule as of the end of the reporting period.

The failure to provide the foregoing information to the Plan Fiduciary within the time specified above shall constitute an event of default under the Plan unless the failure is due to

circumstances beyond the control of the Reorganized Debtor in which case the delayed information shall be provided to the Plan Fiduciary as soon as reasonably practicable.

13. The provisions of this Order are non-severable and mutually dependent.

14. The fourteen-day stay otherwise imposed by Bankruptcy Rules 6004(h) and 6006(d) is hereby waived, and this Order shall be effective immediately upon entry.

Dated: May 18, 2011

/s/ James B. Haines, Jr.
_____
The Honorable James B. Haines, Jr.
United States Bankruptcy Judge